UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIMISH GANATRA,

Plaintiff,

v.

WASHTENAW COUNTY PROSECUTOR'S OFFICE and ELI SAVIT,

Defendants.
_______________________________/

Case No. 2:25-cv-13087

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING MOTIONS TO STRIKE AND SEAL [8, 11], GRANTING MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY [16, 19], AND DENYING MOTION TO DISMISS [13]**

Nimish Ganatra sued Washtenaw County Prosecutor Eli Savit and his office for First Amendment retaliation, race discrimination, and retaliation against whistleblowers. Ganatra was the third-highest ranking prosecutor in the office when he submitted a complaint to the Michigan Attorney Grievance Commission that addressed conduct of one of his supervisees. He was later investigated, placed on leave, and reinstated without some of his former job responsibilities.

For the following reasons, Ganatra stated a First Amendment retaliation claim, and Savit is not entitled to qualified immunity at this time. Ganatra also stated claims under the Whistleblowers' Protection Act, Title VII, and the Elliott Larsen Civil Rights Act. Accordingly, the Court will deny Defendants' motion to dismiss.

## BACKGROUND

### I. Factual Background

Nimish Ganatra has served as a prosecutor since the beginning of his legal career in 2001. After Eli Savit took office as the elected Prosecutor of Washtenaw County in 2021, ECF No. 1, PageID.2, he promoted Ganatra to First Assistant Prosecuting Attorney. As First Assistant, Ganatra oversaw all felony prosecutions. *Id.* at PageID.4. Savit later promoted him to Senior Assistant, a position in which he supervised daily operations of the criminal division. *Id.* at PageID.4–5. As Senior Assistant, Ganatra was the third highest ranking prosecutor in the office and supervised all First Assistants and their respective unit assignments. *Id.* at PageID.33; ECF No. 13, PageID.192.

Two incidents in 2024 led Ganatra to report "Jane Doe," one of the prosecutors under his supervision, to the Attorney Grievance Commission. First, in July 2024, Doe and several police officers were examining a crime scene where a deceased victim's body was recovered. An anthropologist at the scene successfully located a missing bone fragment. The discovery was captured on an officer's body worn camera. ECF No. 1, PageID.9–10. But the video allegedly also captured Doe directing the officers not to disclose the recovered evidence to the defendant's attorney "until after the defendant underwent a polygraph exam, or otherwise agreed to take one." *Id.* at PageID.11. Ganatra learned of Doe's conduct a week later and "took steps to ensure" the defendant's attorney was aware of the discovery. *Id.* at PageID.12. Although Ganatra told Doe to inform the defendant's attorney herself, she never did. Ganatra

also directed another attorney in the office to research potential prosecutorial liability from the incident. *Id.*

Second, in September 2024, to justify a request for cash bail in a criminal case—a practice against the policy of the Washtenaw County Prosecutor's Office except in extraordinary circumstances—Doe represented to the court that she authorized a new complaint against the same defendant that day. *Id.* at PageID.6–7. The court relied on Doe's representation and remanded the defendant into custody. He also requested that Doe expedite the swearing of the new complaint. *Id.* at PageID.7.

A state magistrate, however, twice declined the complaint for lack of probable cause—first an hour after Doe's request for cash bail, then again four days later. *Id.* at PageID.7–8. When the magistrate rejected the complaint for a second time, Doe told one of her supervisors but "did not reveal that [the defendant] was in custody . . . nor that she never notified the court that the new complaint had been rejected." *Id.* at PageID.8. The defendant remained in custody for a week solely because of Doe's "representation to the Court that a new complaint was being expeditiously sworn against [the defendant], and her subsequent failure to notify the Court that the new complaint was declined" by the magistrate judge. *Id.* at PageID.9.

Ganatra later discussed both incidents with a Washtenaw County District Judge. After he watched the bodycam footage of the crime scene in the first case, the judge told Ganatra he needed to report Doe to the Attorney Grievance Commission (AGC). Then, when they discussed the cash bond incident, the judge "directed his

court staff to make the video discs" of the hearing at which Doe requested cash bail. *Id.* at PageID.13. Ganatra informed Victoria Burton-Harris, the second-in-command behind elected prosecutor Savit, of his meeting with the judge and his intention to file a grievance with the AGC. She agreed and offered to cosign the grievance. *Id.* at PageID.14.

Ganatra and Burton-Harris met with Savit on November 18, 2024, to discuss filing a complaint with the AGC. Savit expressed some skepticism and requested that Ganatra call the state bar's "ethics hotline" before moving forward. *Id.* at PageID.15. Ganatra did so, and the ethics hotline advised that he was obligated to report Doe's conduct, especially because supervisors have special reporting responsibilities for their subordinates. Ganatra reported back to Burton-Harris and Savit, advised that he would file the grievance, and offered to let them cosign. Neither did. *Id.* at PageID.16. But one of the First Assistants under Ganatra's supervision, Andrew Childers, did cosign the grievance. *Id.* at PageID.17. Childers was the First Assistant who discovered the bodycam footage that showed Doe instructing officers not to disclose newly discovered evidence to the defendant's attorney. *Id.* at PageID.12.

Ganatra's grievance apparently ruffled the feathers of Burton-Harris and Savit. Burton-Harris told Ganatra in a closed-door meeting shortly after he advised her of his intent to file a grievance that "Savit is watching you and listening," that Savit was upset Ganatra asked another prosecutor to research prosecutorial liability regarding the incidents, and told him he could no longer hold weekly leadership meetings with the First Assistants without Savit present. She also "asked about his

retirement date and pension, and asked if he was only continuing to work in the prosecutor's office because of that." She reminded Ganatra that he "served at the pleasure" of Savit. *Id.* at PageID.17. Later, at a "leadership meeting," Savit warned that employment decisions and related conversations needed to stay within the leadership team to avoid office drama as well as airing "internal dirty laundry" with those outside the office. *Id.* at PageID.18–19.

Savit and Burton-Harris received a copy of the grievance against Doe. "Attachment 2" to the grievance was a document that read:

> Good afternoon,
>
> Mr. Don Lee was taken into custody by Judge Simpson on 09/26/24 at 11:43 am under the People's representations that Mr. Lee had a new complaint being authorized that same day . . . .
>
> At 12:31 PM, Magistrate Fink did not find probable cause to sign and issue the complaint and warrant on that same complaint. No notification was sent to this office regarding this matter.
>
> On 09/30/24, the complaint was again in front of Magistrate Fink for the same complaint and again probable cause was not found. Again, no notification was sent to this office.

*Id.* at PageID.20. When Burton-Harris inquired with the Judge's Chambers about the source of the email, they replied that "they searched their email programs and did not find any evidence that the document was ever emailed to anyone, but that it only resided in [the judicial coordinator's] deleted folder as an unsent email." *Id.* at PageID.21.

Burton-Harris and Savit were concerned about the source of the supposedly internal, unsent email. On December 16, 2024, at 1:30 p.m., they summoned Ganatra

and the cosigning First Assistant and asked, "Which one of you did [the judicial coordinator] send [the email] to?" Ganatra replied, "Would have been me." *Id.* Burton-Harris concluded the meeting by telling Ganatra, "When you get back to your office, I want you to forward me that email that [the judicial coordinator] sent to you. OK?" But minutes after Ganatra got back to his office, Burton-Harris walked in. At some point during that conversation, Ganatra mentioned that he had a paper file at home and that it would likely "reflect where he obtained" the document. *Id.* at PageID.22.

But Burton-Harris said he would not be permitted to retrieve it and summoned him back to Savit's office at 1:42 p.m. *Id.* There, they informed Ganatra that he would be placed on leave, effective immediately, while they investigated. They also expressed disappointment that the office's "dirty laundry" had been aired, and Burton-Harris said she "tried [her] best to warn [Ganatra] before [he] went down this road." *Id.* at PageID.23.

"Just after" he was placed on leave, Ganatra notified Savit that the document in question was a publicly available document contained within the "Bind Over Packet," available on the court's docket. *Id.* at PageID.24–25. And Savit allegedly received the bind over packet that included the document from one of his staff members that day. *Id.* at PageID.26. Nonetheless, Ganatra remained on leave. Burton-Harris later explained that the leave resulted not from their belief that Ganatra obtained the document fraudulently but because he "changed his story" about where he received it. *Id.* at PageID.27.

Defendants later hired an outside law firm, Dykema, to investigate Ganatra. *Id.* at PageID.31. After six months, the Dykema investigation found that Ganatra "did not forge" the document and that there was "insufficient proof" it was sourced inappropriately. Ganatra returned to work, but without some responsibilities that he formerly enjoyed. *Id.* at PageID.33–35.

II. Procedural History

Ganatra sued the Washtenaw County Prosecutor's Office and Eli Savit under 42 U.S.C. § 1983, Michigan's Whistleblowers' Protection Act, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. *Id.* at PageID.36–42. He requested both damages and equitable relief—namely, reinstatement of his former duties. *Id.* at PageID.43. Defendants moved to strike information from the complaint that "disclose[d] privileged information and details of the grievance Plaintiff submitted to the Michigan Attorney Grievance Commission." ECF No. 8. They asked the Court to "strike" information from the text of about thirty paragraphs of the complaint and related subheadings. *Id.* at PageID.77–78. Ganatra responded, ECF No. 9, and Defendants replied, ECF No. 10. Defendants then moved to dismiss the complaint in its entirety, and Defendant Savit invoked qualified immunity. ECF No. 13. Ganatra opposed the motion, ECF No. 14, then moved for leave to file notices of supplemental authority, ECF Nos. 16, 19. Defendants responded to both. ECF Nos. 15, 18, 20.

## DISCUSSION

The Court will first address the motions to strike and seal together because they are based on the same argument. ECF Nos. 8, 11. Then, the Court will address

the motions for leave to file supplemental authority, ECF Nos. 16, 19, before turning to the motion to dismiss, ECF No. 13.

I. Motions to Strike and Seal

"The federal courts do their business in public—which means the public is presumptively entitled to review every document that a party files with the court for purposes of influencing a judicial decision." *Grae v. Corr. Corp. of Am.*, 134 F.4th 927, 930 (6th Cir. 2025) (Kethledge, J.). The Court's local rules permit items to be filed under seal if a statute or rule authorizes sealing. E.D. Mich. L.R. 5.3(b)(3)(A)(iv). Similarly, motions to strike are generally disfavored. *See Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). The Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But motions to strike are only granted if the information in the pleading has "no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

Defendants argued that Michigan Court Rule 9.126(A) prevents the disclosure of information related to the grievance Ganatra filed against Doe and requires certain information to be stricken from the complaint and filed under seal for their motion to dismiss. ECF Nos. 8, 11. Rule 9.126(A) provides that "investigations by the administrator or the staff are privileged from disclosure, confidential, and may not be made public." Defendants thus requested that "any allegations which go beyond merely disclosing that a grievance was submitted to the AGC" be stricken from the

complaint, ECF No. 8, PageID.77, and that they be permitted to file the grievance as an attachment to the motion to dismiss under seal, ECF No. 11, PageID.157.

The Court agrees with Plaintiff that the information is not privileged or confidential in the present context. For starters, the rule applies to "investigations by the administrator or the staff." Mich. Ct. R. 9.126(A). Allegations in a grievance may become relevant to the AGC's investigation, but the information a complainant files is not the result of an "investigation[] by the administrator" or his staff. Information does not automatically become privileged simply because it was the impetus for a complaint. In reply, Defendants also argued that this interpretation of Rule 9.126(A) "contradicts the plain language of the statute and would result in absurd results." ECF No. 10, PageID.130 (citation modified). But the Court reaches the opposite conclusion; the plain language of the rule limits its application to the commission and its investigation, not allegations and information that form the basis of a grievance.

Additionally, the State Bar of Michigan published an article that explains the effect of Rule 9.126(A) on complainants:

> Strict compliance with MCR 9.126 is expected from everyone on the commission's staff. Not so for a complainant. Nothing in the text of MCR 9.126 suggests that it imposes a duty of confidentiality on complainants. Furthermore, the court rule must be construed so as not to infringe on the complainant's constitutional right to engage in the free exercise of truthful speech. If a grievance is dismissed because it did not warrant further investigation, the complainant has a First Amendment right to publicly discuss and disagree with the grievance administrator's determination. Preventing injuries to the reputation of attorneys is an insufficient reason to repress speech that would otherwise be free.

Robert Edick, *A Primer on Grievance Confidentiality*, Mich. Bar J. (Nov. 2022) [https://perma.cc/65GJ-WHKU]. The Court finds that the analysis from the State Bar

of Michigan, though not a controlling authority on the interpretation of Michigan law, is nonetheless persuasive. Defendants pointed out that, later in the article, Edick argued that when an attorney is the complainant, disclosure "arguably violates the spirit, if not the letter" of the rule. *Id.* But that portion of the article, unlike the portion excerpted above, is an opinion without case citations, and not textual analysis. It does not displace the Court's textual conclusion above that the rule creates no obligations for those outside the AGC's investigatory process. Further, the author's point is that disclosure is inappropriate when it "serves no purpose other than to publicly embarrass the respondent-attorney." *Id.* Here, by contrast, Ganatra filed a nonfrivolous complaint in which the allegations were necessary not just for his whistleblower protection claim, but also for his First Amendment and Title VII claims.

What is more, none of the cases Defendants cited imposed a confidentiality obligation on the complainant. *See* ECF No. 8, PageID.74–76. Thus, Defendants did not show that the information in the pleading bore "no possible relation to the controversy," nor did they show that a statute or rule overcomes the Court's baseline presumption that information is open to the public. Accordingly, the Court will deny the motions to seal and strike, ECF Nos. 8, 11.

II. Motion for Leave to File Notices of Supplemental Authority

The Court will grant both motions for leave to file supplemental authority, ECF Nos. 16, 19, because the cases Ganatra provided postdate the date he responded to the motion to dismiss. *See Jones v. St. Clair Cnty.*, No. 24-cv-11965, 2025 WL

3754228 (E.D. Mich. Dec. 29, 2025); *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975 (6th Cir. 2026). The Court will consider the additional cases below to the extent they are relevant.

III. Motion to Dismiss

The Court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts that exceed a speculative level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court must view the complaint in the most favorable light to the plaintiff, presume all well-pleaded factual assertions are true, and draw reasonable inferences in the nonmoving party's favor. *Bassett v. NCAA*, 528 F.3d 426, 430 (2008). The Court need not credit a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678.

In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

Defendants moved to dismiss all four counts alleged in the complaint. The Court will address each in turn.

*A. First Amendment Retaliation*

Ganatra alleged that Defendant Savit retaliated against him for his speech in violation of the First Amendment. ECF No. 1, PageID.36–38. To state a claim of retaliation under § 1983, Ganatra must allege that: (1) he "engaged in speech protected by the First Amendment;" (2) that Savit "took an adverse action against him;" and (3) "that a causal connection exists between the speech and action." *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 307 (6th Cir. 2023). Savit moved to dismiss the retaliation claim on two grounds.

1. Protected Speech

First, Savit argued that Ganatra submitted the grievance as part of his professional duties at the Washtenaw County Prosecutor's Office, not as a private citizen. ECF No. 13, PageID.198. The Supreme Court has articulated a two-step inquiry for public employee speech. First, did the employee speak "as a citizen on a matter of public concern"? Second, if so, did the government have "an adequate justification for treating the employee differently" than a member of the public? *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968)). As to the first step, public employees do not speak as citizens when they "make statements pursuant to their official duties"; because, in that case, "the Constitution does not insulate their communications from employer discipline." *Lane v. Franks*, 573 U.S. 228, 237 (2014) (quoting *Garcetti*, 547 U.S. at 418).

In *Lane*, the Supreme Court narrowed the scope of application of *Garcetti*. *See Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) ("After *Lane*, the *Garcetti*

exception to First Amendment protection for speech . . . must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment."). There, the Supreme Court held that a public employee did not speak pursuant to his official duties when he gave truthful testimony under oath. *Lane*, 573 U.S. at 238. The Court concluded that the Eleventh Circuit had read *Garcetti* too broadly when it reasoned that "because Lane learned of the subject matter of his testimony in the course of his employment . . . *Garcetti* requires that his testimony be treated as the speech of an employee." *Id.* at 239. Additionally, the Sixth Circuit recognized post-*Lane* that the inquiry "does not turn solely on whether the speech contained information they obtained as a result of their employment . . . but depends primarily on whether the speech is ordinarily within the scope of an employee's duties." *Ashford v. Univ. Of Mich.*, 89 F.4th 960, 972 (6th Cir. 2024) (citation modified). And "[s]peech made outside an individual's chain of command is less likely to be within an employee's ordinary job responsibilities." *Id.*

*Lane* makes the question of whether Ganatra was speaking as a citizen on a matter of public concern a close call. On one hand, Ganatra submitted the grievance as Doe's supervisor. But on the other, Defendants warned Ganatra not to use public resources to complete and file the complaint, so he took personal time off to submit the grievance. ECF No. 1, PageID.16–18. Indeed, Ganatra alleged that he was obligated, as an attorney, to report simply because he knew of the conduct. *Id.* at PageID.14. True enough, Ganatra only learned of the information on which he based his grievance because of his employment, but so did Lane. *See Lane*, 573 U.S. at 239.

And the fact that the AGC is not in Ganatra's chain of command is another factor in his favor. *See Ashford*, 89 F.4th at 972. At bottom, the inquiry is fact-intensive, and the parties pointed to allegations in the complaint that support both conclusions. But Ganatra's allegations that he took time off work to submit the grievance, that his superiors discouraged the reporting, and that the AGC is outside his chain-of-command, make it plausible that he was speaking as a citizen with First Amendment protection.

2. Adverse Action

Second, Savit argued that Ganatra suffered no adverse action. ECF No. 13, PageID.204. An "adverse action" is a "retaliatory action[] that might silence an ordinary person." *Lemaster*, 65 F.4th at 307; *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc). Whether an action would have deterred an ordinary person is usually a fact question. *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583–84 (6th Cir. 2012) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). But a plaintiff must allege more than "de minimis threats or 'inconsequential actions.'" *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007). Otherwise, the claim may be dismissed as a matter of law. *Wurzelbacher*, 675 F.3d at 584.

Ganatra alleged the following adverse actions: (1) having Savit sit in when Ganatra conducted supervisors' meetings, (2) making veiled and overt threats about airing the office's "dirty laundry" with outsiders, (3) placing Ganatra on leave, (4) accusing Ganatra of unethical conduct, (5) conducting a "bad-faith investigation,"

and (6) stripping him of various duties after he returned. ECF No. 1, PageID.37. As part of the final allegation, Ganatra included a laundry list of adverse actions he allegedly suffered upon his return, like no longer holding weekly leadership meetings with and receiving weekly reports from the First Assistants he supervised, no longer coordinating new hire orientation and training, "[b]eing shunned by Defendant Savit," and sitting second chair behind less experienced prosecutors. *Id.* at PageID.34–35.

The Court cannot conclude as a matter of law that Ganatra's allegations are "genuinely inconsequential" and fail to state a retaliation claim. *See Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (citation modified). First, the Sixth Circuit recently held that, in the FMLA retaliation context, an allegation of paid administrative leave for over a year was sufficient to allege an adverse action. *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 982 (6th Cir. 2026) (citing *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)). Ganatra also alleged that Savit conducted a six-month, bad-faith investigation when he knew the document he was supposedly investigating was publicly available. *Cf. id.* (holding that a failure to investigate during paid leave purportedly for an investigation was an adverse action); *see also Jones v. St. Clair Cnty.*, No. 24-cv-11965, 2025 WL 3754228, at *9 (E.D. Mich. Dec. 29, 2025) (holding that a pretextual investigation could dissuade a person of ordinary firmness).

And although he retained his job title, Ganatra alleged facts that, if believed, could lead a jury to conclude that he was demoted in all but name only upon his

return. Related to his supervisory duties, Ganatra could no longer hold leadership meetings, orient or train new hires, receive weekly reports from his supervisees, or schedule assignments. ECF No. 1, PageID.34. And related to his prosecutorial responsibilities, he could no longer coordinate murder investigations, review and file habitual offender notices, attend preliminary examinations, or handle issues from legal clerks related to the criminal division daily operations. Further, he had to sit second chair to less experienced prosecutors on trials. *Id.* at PageID.34–35. Taken together, the Court cannot conclude that the actions are inconsequential as a matter of law.

What is more, Defendant Savit did not argue that the change in job responsibilities on Ganatra's return did not constitute an adverse action. Rather, he only argued that the changes are insufficient because they were attributed to "Defendants" generally, not Savit in particular. ECF No. 13, PageID.207–208. But there are only two Defendants here: Savit and the office that he leads. And Ganatra offered plenty of facts about Savit's actions as well as facts "to support a reasonable inference" that Savit took the actions. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019); *see* ECF No. 14, PageID.363–364 (identifying the allegations in the pleading that support the inference that Savit was responsible for the changes in job responsibilities). Accordingly, Ganatra's claim does not fail for lack of adverse action.

3. Qualified Immunity

Finally, Savit argued that even if Ganatra stated a claim for retaliation, he is entitled to qualified immunity. Once a defendant asserts qualified immunity, the

plaintiff bears the burden to overcome it. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To overcome a claim of qualified immunity on a motion to dismiss, a plaintiff must "plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"Proving that a constitutional right is clearly established is no easy task . . . ." *Fitzpatrick v. Hanney*, 138 F.4th 991, 995 (6th Cir. 2025). A right is clearly established only if it is "dictated by controlling authority" that "clearly prohibits the [official's] conduct in the particular circumstances before him." *Id.* (alteration in original) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "If reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Rieves v. Town of Smyrna*, 959 F.3d 678, 695 (6th Cir. 2020) (citation omitted).

But "[u]ltimately, whether a speech-retaliation claim is clearly established at the pleadings stage rises and falls with whether the claim was sufficiently alleged." *Myers v. City of Centerville*, 41 F.4th 746, 766 (6th Cir. 2022); *see also Hudson v. City of Highland Park*, 943 F.3d 792, 798 (6th Cir. 2019) ("[W]e have repeatedly held—we have repeatedly clearly established—that employers may not retaliate against employees based on their protected speech."). The standard is arguably inconsistent with the specificity requirements for qualified immunity in other contexts. *See*

*Blackwell v. Chisholm*, No. 24-1947, 2025 WL 3091125, at *7 (6th Cir. Nov. 5, 2025). But published Sixth Circuit precedent is binding. Because the Court finds that Ganatra's allegations are sufficient to state a claim of First Amendment retaliation, Defendant Savit is not entitled to qualified immunity at this time.

*B. Whistleblowers' Protection Act*

Michigan's Whistleblowers' Protection Act protects an employee who "reports or is about to report . . . a violation or a suspected violation of law or regulation or rule." Mich. Comp. Laws § 15.362. Under the statute, employers "shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment." *Id.* To establish a prima facie case, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse action, and (3) there was a causal connection between the protected activity and the adverse action. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 629 (6th Cir. 2012).

Defendants argued that Ganatra failed to plead "one of the specific adverse employment actions listed" in the statute as Michigan law requires. ECF No. 13, PageID.214 (quoting *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 251 n.14 (2014)). And Defendants correctly noted that "demonstration of some abstract 'adverse employment action' as that term has developed in other lines of caselaw will not be sufficient." *Wurtz*, 495 Mich. at 251 n.14. But here, Ganatra alleged that he filed a grievance and was subsequently stripped of the "privileges of employment" he formerly enjoyed. Mich. Comp. Laws § 15.362; ECF No. 1, PageID.34–35.

The facts are thus distinguishable from *Esordi v. Township of Macomb*, No. 366541, 2025 WL 2495908, at *9 (Mich. Ct. App. Aug. 29, 2025), the principal case on which Defendants relied. *See* ECF No. 13, PageID.214–215. There, the plaintiff claimed his work conditions were altered when he returned to work. But the court concluded that the changes were not actually adverse to the plaintiff, so it held that plaintiff failed to establish an adverse action. *Esordi,* 2025 WL 2495908, at *9. In contrast, as noted above, Ganatra alleged substantive, negative changes in his work conditions upon his return. Accordingly, the Whistleblowers' Protection Act claim is not subject to dismissal.

*C. Race Discrimination (Title VII and Elliott Larsen Civil Rights Act)*

Finally, Ganatra alleged that the Washtenaw County Prosecutor's Office discriminated against him because of his race in violation of Title VII. ECF No. 1, PageID.40–41. Title VII prohibits employers from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment" because of the employee's race. 42 U.S.C. § 2000e–2(a)(1). Similarly, the Elliott Larsen Civil Rights Act prohibits employers from discriminating against an employee "with respect to employment, compensation, or a term, condition, or privilege of employment" because of race. Mich. Comp. Laws § 37.2202(1)(a). The federal and state claims are analyzed under the same framework. *See Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *2 (6th Cir. Oct. 21, 2025) (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)).

Defendants argued that Ganatra's claims must be dismissed because he failed to identify a similarly situated employee outside his protected class. ECF No. 13, PageID.211. But the Sixth Circuit has recently held in the Title IX context that a plaintiff need not "plead that [his] proffered comparator[ is] similarly situated in all relevant respects." *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 985 (6th Cir. 2026) (reversing the district court's decision because it improperly implied a heightened pleading standard to the discrimination claim); *see also Nelson v. Christian Bros. Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007) (collecting cases discussing that Title VII and Title IX standards are congruous). Accordingly, at this stage, the Court need not determine whether the comparators Ganatra identified in his complaint are similarly situated.

Finally, Defendants also argued that the discrimination claims fail because Ganatra did not plead an actionable adverse action. ECF No. 13, PageID.214. "The adverse-action standard for First Amendment retaliation claims is different from the adverse-employment-action standard for Title VII claims." *Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019) (citing *Benison v. Rossi*, 765 F.3d 649, 659 (6th Cir. 2014)). Nonetheless, the Court finds that, for many of the reasons stated in its First Amendment analysis, the allegations in the complaint suffice to plead that Ganatra suffered "a materially adverse change in the terms and conditions" of his employment. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019); *see also Bowman v. Shawnee St. Univ.*, 220 F.3d 456, 461–62 (6th

Cir. 2000) (explaining that "significantly diminished material responsibilities" might constitute a materially adverse change).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motions to strike and seal [8, 11] are **DENIED**.

**IT IS FURTHER ORDERED** that the motions for leave to file notices of supplemental authority [16, 19] are **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss [13] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 24, 2026